The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good afternoon, counsel. This is case number 4-23-0571, Downs v. Peters. Counsel, if you could state your appearances, first for the appellant. Good afternoon, your honors. Sarah Stevenson Pesco with the law firm of Mahoney and Mahoney for plaintiff appellant. Okay, thank you. And for the appellee, Chris Drinkwine for Mandy Peters. Thank you. Ms. Pesco, you may proceed with your argument. Thank you. May it please the court, Attorney Pesco here for plaintiff. Attorney Mahoney is also on the matter, but he is not going to be arguing this afternoon. Your honors, we would ask you to consider the main point here in our brief that we would like to be reviewed by this court, and that the testimony in the trial court of the plaintiff herself was that she did not give express authority for this settlement. Here we are asking this court to reverse and remand the dismissal of the plaintiff's complaint in the trial court and send the matter to the trial court for further hearing consistent with the plaintiff's underlying personal injury complaint. As your honors review of the record would show, the plaintiff is being required by the trial court in the ruling to now sign a release and settle the case. The plaintiff asserts here that there was no proper settlement, no proper contract reach, no valid offer, no legitimate acceptance, and no essentially, most importantly, no meeting of the minds, because the plaintiff herself did not give that authority. Your honors, we would ask you to consider... Good afternoon. I have a question. While plaintiff may not have given the authority to her attorney, at no time did the plaintiff indicate here that she did not herself agree to the terms of the settlement during that phone call that occurred, I believe it was on October 23rd, 2022, the telephone conference with her attorney. Isn't that correct? Well, your honor, I would say that that characterization is overbroad and that I believe the plaintiff's testimony covers the situation. The plaintiff's testimony was not crossed at the hearing, nor did the court ask her any questions. Her statement, and I will look at the exact transcript if needed, but was simply that she did not give authority to settle. And so I believe that's broad enough to assert that she did not give that specific authority that your honor is requesting. Well, I guess with all due respect, one could interpret that differently. However, didn't give authority to her attorney, but that doesn't preclude the fact that she herself may have agreed to the terms of the settlement. And that's indeed what the trial court relied on. Isn't that correct? Even assuming the trial court did assume that there may have been an unauthorized letter that went out or the letter went out in error, a demand letter, et cetera. So the trial court set all that aside, but started from the that she herself did agree to the terms of the settlement. I understand that it's the trial court's assertion, but we believe the trial court was overbroad in making those findings. Go ahead, I'm sorry. Thank you. Thank you, your honor. Essentially, we believe that in the looking at the contract here, there was no express contract. And we asked the court to consider the three issues articulated in our brief. And I don't mean to recite the brief entirely, but I want to hit on just a summary fashion of those issues. Can I follow up for a moment on Justice Zenoff's question with just a slightly different angle before you get started? Yes, judge. The only two people who know whether Mr. Mahoney was authorized by the client to agree to the settlement on October 25th after that Sunday phone call would be attorney Mahoney and your client. Is that fair? Yes, judge. And the evidence also seems to support the conclusion that attorney Mahoney, after that phone call, thought he had authority, that the client had authorized him to. Yes, your honor. So if that's the case, isn't it clear that if attorney Mahoney has a different view on this later, it's based on what she tells him later, not based on what he heard at the time of that phone call? I'm not sure it's so limited in scope, your honor. I think there could have been an error in attorney Mahoney's understanding. But based on what he knew immediately after that phone call, he thought he had authority. And I know that she doesn't view it that way, but isn't it for the trial court to resolve which one is more credible? Yes, attorney Mahoney thought after the phone call or what your client testified to at the hearing. Yes, your honor. The trier of fact is the individual, the court is the trier of fact in this matter. Yes, judge. Thank you. Thank you, your honor. We're asking the court to consider the three issues that the trial court made an error in interpreting the law on the defendant's motion to enforce the Second, that the trial court erred in calling plaintiff's testimony untruthful, essentially. And third, that the trial court erred in applying the facts to the law. We believe myriad standards of review could actually apply in this matter. We do believe a de novo review would be appropriate due to the nature of the dispositive motion as articulated by the nationwide court. Secondly, as the defendants assert in their argument, the clearly erroneous standard we believe also could apply based upon the plaintiff's explicit testimony. She did not give actual authority. And thirdly, likely the court would consider this matter under the manifest weight of the evidence standard as articulated by the La Conte court. What misinterpretation of law did the trial court make? We believe that the court has inappropriately discerned that without express authority here, the court would enforce the settlement agreement. Well, what conclusion of law is there? That sounds like a fact-specific thing for this case. What matter of law did the trial court make a mistake about? Well, in arguing, in finding that the motion dismissed was proper here, we believe it was not proper and that the settlement agreement should not have been enforced. So then that the court would review the entire record on the whole de novo, your honor. And the motion was a 619 motion. I don't think that your client filed counter affidavits, but it seems as though there was no disagreement that the matter would be subject to a bench hearing. Is that fair? That's correct, your honor. And so the judge would be making findings of fact after that hearing? Yes, your honor. There was an evidentiary hearing. Yes. Thank you. Thank you. In looking at the important facts here, we'd ask this court to again, consider, which I've hit some, but I'll just cover them. There was no evidence of authority from the plaintiff for the erroneous initial demand letter. We believe that the erroneous initial demand letter is uncontroverted here as well by both parties. Secondly, the money that was sent by the defendants in attempt, some kind of attempt to respond to that erroneous offer was sent by defendants. And again, erroneously deposited, but in a client trust account by plaintiff staff, attorney staff, there was no release signed by plaintiff prior to the money having been sent by defendants. There was still no authority here then for that deposit by the plaintiff herself. And there was no evidence of any client knowledge here. Further, the matter fact here is that when the lawsuit was filed in August, attorney Mahoney discerned there was money in the trust account thereafter. And then that also was a situation where the plaintiff did not give her own authority for that settlement at that time either. And any authority from the plaintiff to settle was not necessarily communicated clearly and appropriately without mistake here to defense counsel. And defense counsel simply should not have sent that money. But moving on to other facts, the plaintiffs also had a phone conversation as we've discussed. The plaintiff herself had that phone conversation with attorney Mahoney in October 2022. Again, as Judge Jordy stated, the statement by attorney Mahoney was that he didn't believe he the authority to settle and conveyed the same. But the plaintiff's later testimony in court for the hearing underlying this matter before your honors is that the plaintiff did not give authority. Looking to the arguments here, well, hitting the most important points here, the plaintiff herself did not explicitly authorize this settlement. She has no other testimony here that she gave any other authority at any other time. The trial court made a finding that she had a change of heart, which is essentially saying she's not being not truthful here, that she did not give that authority. Essentially, we also believe that there was a condition precedent as well as we articulated in our brief that the defendant should not have sent any kind of settlement fund without a release signed by the plaintiff herself. Isn't that a provision that would be to the defendant's benefit? What is the consequence of... How does that harm the plaintiff to send money before it might be due? Well, I think it would put us in the situation we're in, your honor. It's not necessarily being seen that way, but I would say it would be best practice for defense counsel to have that release. It's generally the course of conduct and these personal injury actions, as your honors likely are aware, and essentially there's not necessarily a harm to the plaintiff except for in this instant situation where the plaintiff says she did not give that authority for settlement. So then it would further complicate the resolution herein. Well, it was expected, however. I mean, there was a letter, I believe, that accompanied the payment that indicated they expected a signed release, and there was also then the representation from Mr. Mahoney's office that it would be sent. So, I mean, again, the trial court listened to the testimony, but I believe concluded she may have... The plaintiff may have just changed her mind about the wisdom of accepting the settlement. The plaintiff's position here, your honors, is simply that a release should have been signed before the money was sent by defendants. But making that argument, you're looking to the terms of the settlement agreement that you say you didn't enter. Yes. How can you do both? It would be an alternate argument, your honor, if the court found that the initial erroneous offer was, in fact, a proper offer. We do not believe that that is the strongest argument. However, it is an alternate argument if your honors felt that that were, in fact, an offer. We believe here in looking at three cases, there's some important distinctions of law here that this court can rely on to support the plaintiff's position. In the Hopkins v. Holt cases cited in our brief, there was an attorney employed to defend a physician in a medical hospital. That attorney had no authority to compromise, give up any right of his client, or consent to judgment against his client without the express consent or authorization of the client. And that court was also citing the Displains Court, 9 Illap III at 444. In the Hopkins case, your honors can see that the defendant agreed to a global settlement with his attorney, but he did not agree to be personally liable. And thereafter in the case, the court was the plaintiffs were trying to enforce that the defendant would be personally liable, essentially. And there was no dispute there that the defendant did not agree to that. It was an issue of whether the attorney could agree on his behalf. The court held in that case that if an attorney negotiated a settlement that the client did not approve, there was not a settlement. Again, further citing the Displains Court. There was a written settlement agreement, clearly on the record in Hopkins. And the defendant was not held personally liable because he did not give his attorney that express authority. Here we do not even have that written settlement agreement as the Hopkins Court had. And we think that those factors support here, that the court would not be required to enforce that settlement. Further looking at the Lampe versus O'Toole case, there was also an evidentiary hearing as an armed matter in that court. And there was a agreement by the plaintiff in that matter to authorize his attorney to accept a settlement agreement. And then at that point, the testimony was clear that he accepted and authorized the settlement offer. However, in our instant case, we did not clearly have an offer and an acceptance, we believe, or a meeting of the minds to have a properly enforced contract. And that court is distinguished from our court here, and that there was just not a clear record of all three factors of the offer, acceptance, and meeting of the mind. And looking at the Lucanti versus Mulganicki Court, if I'm stating that correctly, I'm not familiar with how to the last name, apologies to the court. There was not an evidentiary hearing, the review of that court was de novo, but looking at the court's statement that if there was an evidentiary hearing and manifest weight of the evidence standard would apply, we believe likely that could be utilized here as well. That in regard to the written representation agreement there, the Lucanti Court shows that the client had given their attorney authority broadly in their representation agreement, but there was no evidence of actual authority in that case. We believe that's very similar to the instant case before your honors, here where the plaintiff did not give actual authority for settlement, as we assert to this court. The Lucanti Court cites the Kulcha court, and in that citing of Lucanti, the court states, an attorney who represents a client in litigation has no authority to settle a claim of the client absent the client's express authorization to do so. And this is a settlement agreement that was made outside of court as a written Lucanti matter alleged by the defendants here outside of court, and the defendants here would have that duty of showing the court why they have that authority to enforce this. We don't believe that has also been met here, but we did have an authority to represent the plaintiff in this matter. Attorney Mahoney did have that authority through the firm, and that is agreed and testified to by the plaintiff herself, but the plaintiff's testimony simply was that she did not give that authority to settle here. And so we believe that is distinguished in the instant matter here, and the court's holding there to overturn that settlement agreement is supported by case, we believe. And essentially, ultimately, we would request that this court again, thank you, your honors, for your consideration, to reverse and remand the the plaintiff's complaint, and we thank you for your time and consideration. All right. Thank you, Ms. Peska. You'll have time in rebuttal. Mr. Drinkwine, you may proceed. Thank you, your honor. I may have pleased the court and good afternoon, counsel. The most important thing to understand in this appeal is that the circuit court's determination that there was a enforceable settlement agreement was not based on settlement authority granted to Downs' attorney. Instead, it was based on Downs' own acceptance of the settlement terms during that telephone call, which her attorney then promptly reported to defense counsel in the circuit court. This factual determination was not against the manifest weight of the evidence, and Downs does not even argue that it was, thereby forfeiting the issue. Mr. Drinkwine, could we get into the question of how we're reviewing granting of a 619 motion under manifest weight? Isn't there a process provided for under 2619 for conducting an evidentiary hearing that only applies when there's no jury demand? With regard to the standard of review, your honor, as the court is well aware, 619 motions are generally reviewed de novo. Isn't there a process? Yes. The court has conflicting affidavits under 619 to have a bench trial so long as it's case without a jury demand, which would not be this one, and there were no conflicting affidavits. That's right, judge. There was no affidavits supporting the response. The parties were attaching all the correspondence between the parties, and I think the procedure that you allude to, your honor, was by agreement overlooked or, if not overlooked, intentionally agreed to proceed the way that the parties did. Obviously, de novo review would ultimately apply to the court's decision in granting a 2619A6, such as this was, but that's not the operative standard of review because there's no contention on appeal that if the trial court was correct in finding an enforceable settlement agreement, that it shouldn't have granted the motion to dismiss. We're under manifest weight of the evidence review here, your honor, because we're talking about an oral settlement that was extracted from previous communications, and there was an evidentiary hearing, so the cases we cite in our brief dictate that manifest weight is your standard of review. Moving on to the matter of the reply brief, your honors, it's important it's important to recognize that Downs effectively failed to file a reply brief in this case because her reply brief provides only that the appellant rests on its original brief and has no new argument for reply. As a result, Downs has failed to respond to the arguments within Peter's appellee's brief and has forfeited any arguments she could have advanced in opposition to Peter's arguments. Authority for this type of forfeiture is found in Central Management Services and Department of State Police v. Illinois Labor Relations Board, which is at 2012 ILAP 4th, 110356, paragraph 26. Mr. Drinkwine, in terms of where you were going next, I had a question with regard to the release and whether it was a condition precedent, but this settlement would not have been consummated or really completed without a written release, correct? And so my question is why really shouldn't it be or shouldn't have been considered a condition precedent, a signed release that is, that wasn't met here? Yes, your honor, the answer is because there's nothing in the record indicating that the parties intended that a signed release be a condition precedent to a binding settlement agreement. Contrary to Downs' argument, the demand letter states only that they would be willing to sign a release for a settlement for the policy limits available along with verification of same. It does not require that the release be signed before Peter's insurer was obligated to tender the $100,000 policy limits. So there's no indication in the demand letter, in the acceptance letter from the insurer or in the confirmation letter from Mahoney's office or anywhere else in the record that the release term had to occur before the payment term or that the settlement agreement was not binding before both terms occurred. So that there's no basis to conclude that there was a condition precedent that needed to be met in this case. And in addition, I would point out that that wasn't an argument advanced by Downs in the circuit court and this court could find that to be forfeited for that reason. Moving past the forfeitures of various types, the circuit court's factual findings in support of its conclusion that there was an enforceable settlement agreement were not against the manifest way to the evidence. The circuit court specifically found that Downs herself agreed to settle for $100,000 and to release her claim against Peters during that October 23rd, 2022 telephone call with her attorney. That factual determination was not against the manifest way to the evidence because it was supported by six sound reasons articulated by the circuit court. First, the plaintiff's attorney's, Downs attorney's testimony that he was certain that a settlement had been reached during the call. Second, there was no reason for Downs attorney to mention Downs aunt was not on the call unless Downs agreed to settle during the call. And third, Downs attorney would not have reported to the circuit court two days later that we have reached an agreement in this case. He wouldn't have said on the record that Downs was supposed to come in and sign the release, but had something come up and couldn't get there. And he wouldn't have reported that this one is all settled. None of those things would have happened if Downs had not agreed to the terms of the settlement during the phone call two days earlier. The circuit court's fourth reason in support of its finding was that Downs attorney's paralegal would not have advised defense counsel in November of 2022 that Downs was supposed to come in and sign the release if Downs had not indeed agreed to do so. And sixth, there was no evidence to support the conclusion that there was any miscommunication during the call between Downs and her attorney. The circuit court reasoned that they had been discussing the straightforward two-term proposed settlement agreement for the preceding four months. And with regard to the third and fourth reasons articulated by the circuit court, it found that there's no way that one could conclude that Downs attorney and his staff on two separate occasions fabricated Downs commitment to sign the release. The only logical conclusion according to the circuit court is that Downs had made the commitment herself by agreeing to the settlement and agreeing to sign the release. The circuit court also wrote that the evidence is clear that Downs accepted the settlement as posited during the October telephone conversation with her attorney because no other conclusion can be drawn from the actions of her attorney in court on October 25th. So the circuit court's factual finding here has not been demonstrated to be against the manifest weight of the evidence. It's supported by those six reasons. And moving back to what counsel characterized as the main point of the case, I think it's important. She characterized the main point in the case is that Downs did not give express authority for this settlement, but she slightly mischaracterizes Downs testimony in doing that. There's only one substantive question and answer that was posed to Miss Downs during the evidentiary hearing, and it's precise nature is important. She was asked the question, and have you given attorney Mahoney authority to settle this case in full at any time? Answer, no, I did not. And the distinction is glossed over by counsel because she says the main point is that she did not give authority to settle the case, but she doesn't testify that she didn't in that question and answer. She says she didn't give attorney Mahoney authority to settle the case. And Miss Peter's contention is that the main point in this case is that there's a difference. There's a distinction between authority to go and settle a case and the inherent authority to communicate to the court and to the defense counsel that a proposed settlement agreement has already been accepted by your client. Well, counsel, you can't accept an agreement by telling your attorney that you accept the agreement. Your attorney has to communicate that acceptance to the other side. So, I feel like we're trying to draw a distinction where there's no difference. I understand your theory is that she would have authorized attorney Mahoney in that phone call, that Sunday phone call, to accept the offer, but it seems like that's all we're talking about, isn't it? Judge Dougherty, I think that Judge Olson explained it best in his order on page eight, when he explained that Downs' attorney did not need authority from Downs to settle the case from October 23rd forward, the date of the phone call. Because she had authorized him to. Right. She could never communicate that herself to the other side. That would be an ethical violation for your attorney. We know she has to act through her attorney, so it's all about the authority that she gave him to act. That's right, your honor. And in fact, attorney Mahoney had a duty to communicate that instance to both counsel and the court. And what Judge Olson found was that Downs settled the case by herself, agreeing to the terms during the phone call, and then he reasoned that... That's my point, Mr. Strickland. That doesn't make any sense. Because you can't settle a case except by communicating acceptance to the other party. That doesn't really make sense, does it? Well, I think it does, Judge. And the way Judge Olson put it was, at that point, the only authority that her attorney needed was to communicate the settlement to others. And he would have had the inherent authority to do that. And we would argue the duty to do that. And so the circuit court's finding recognizes the distinction between authorizing an attorney to go and try and settle a case, often with some predetermined monetary limit on the one hand, and then on the other hand, after deciding to accept terms that are already on the table, the attorney's duty to go and report that to the court and counsel. Right, right. It's still authorization. She authorized him to accept a settlement offer that had been made. Correct. Authorized him to communicate to the court and to counsel that she had accepted the only terms that had been proposed. In any event, any inconsistency, which we don't see, but any inconsistency is not being argued as a reason for determining that the circuit court's ruling was against the manifest way to the evidence in this case. So the circuit court's factual finding was not against the manifest way to the evidence. In our view, respectively, there's no cogent argument being advanced by Downs explaining why she believes that it was. The three arguments that she does advance on appeal, however, are each without merit. Her first appellate contention is that the circuit court misinterpreted the laws applied to the motion to enforce the settlement agreement. She argues that a mistake can be grounds for setting aside a settlement. And because she testified that she did not authorize her attorney to settle, she should not be prejudiced by her mistakenly sending out the demand letter. But what she fails to recognize is that the circuit court accepted the fact that the demand letter was mistakenly sent out without her attorney's knowledge. But the circuit court did not enforce the settlement agreement based on the correspondence between Peter's insurance company and Downs' attorney. Instead, the court found that Downs agreed to the settlement when she expressed her consent to her attorney during that telephone call. Downs also argues that her testimony that she did not authorize her attorney to settle means that the attorney could not bind her to the settlement agreement. But the circuit court's determination that there was a binding settlement agreement, again, was not based on authority granted to her attorney, but rather on her own acceptance during the phone call. I already covered the condition precedent argument in response to Judge Zinoff's question. And that would be the last component of the first appellate contention, which is without merit and should be rejected. Downs' second appellate contention that the circuit court erred in finding her testimony untruthful is also without merit. The circuit court credited Downs' testimony that she did not extend authority to her attorney to settle the finding that, quote, there was no express authority granted by Downs to have her attorney settle this case at any point from the initiation of the representation and continuing into the early part of October of 2022. Therefore, contrary to Downs' contention, the circuit court did not find her testimony untruthful. It credited her testimony. And after doing so, the court found Downs' attorney did not need authority to settle the case because she settled it herself by agreeing to the terms of the settlement during the phone call. And all he needed to do was report that. Mr. Drankwine, this goes back to what Justice Duarte was asking about. And it's that portion of the court's order that's a little confusing. And I think if you read between the lines, it appears what the trial judge was saying is she did not communicate. Well, the only way to understand what the court is saying is that she expressly agreed in her discussions with her attorney that she would accept the settlement. That is the only way to interpret that and get to the result that the trial court got to. Isn't that right? That's right. Okay. So this business that he was not authorized, what's the verbiage again from the order that he was not expressly authorized? Well, it's not that he wasn't authorized. Of course, he was authorized to report. But the trial judge said something along those lines, right? Well, he said she settled it herself. Yeah. And he said something that he did not have the authority. It says the only thing downstated in court was that she did not extend authority to Attorney Mahoney. Excuse me, that's not the portion that I'm finding here. But what I think is that the trial court was saying is when he said that she settled it herself, it was that she had communicated in conversation with Attorney Mahoney that she was agreeing to the settlement, not that she was communicating to the defendant or the defendant's attorney yourself that she was accepting the settlement, correct? That's right. Okay. All right. Thank you. And again, that distinction, the inconsistency, if there is one, is with his finding that her testimony was credible, but that's why it's important to understand what she said. She didn't say that she didn't agree to the settlement during her testimony. She said that she didn't grant Attorney Mahoney authority to settle. And our position is that those are two different things. So the circuit court's finding that Downs never gave her attorney authority to settle the case is not inconsistent with the finding that Downs agreed to the settlement agreement during the phone call. And her attorney then carried out his duty to report that agreement to the court and to defense counsel. That's all that occurred. And again, this is not an argument that's articulated in the one and only brief filed by plaintiff. But that's Peter's position with regard to the issue your honors raised. The third appellate contention is basically reiteration of arguments that were already advanced in the first and the second. She argues that four, conclusions should have been drawn by the circuit court, but those conclusions are either inconsequential or not supported by the record. Again, the mistakenness in the tendering, the reiteration of the condition precedent argument, which is wholly without merit and not supported by the record. And then that there was some mistake in the communication between her and her attorney, which the trial court reasoned was not reasonable. And that hasn't been explained. Plaintiff hasn't explained why that was against the manifest way to the evidence that this was a simple two term settlement agreement that they had been discussing for four months. And then the last conclusion is that she shouldn't have been required to sign the release. But of course, if the trial court was correct, that the settlement agreement was enforceable, he was entirely correct in directing her to sign the release. So for those reasons, the defendant appellee, Mandy Peters respectfully requests that this court affirm the judgment of the circuit court of Stevenson County. Thank you. All right. Thank you, Mr. Drinkwine. Ms. Peska, rebuttal argument. Thank you, your honors. Your honors, the plaintiff appellant here would request that your honors not simply deny appellant's request for failure to file a reply brief. We believe such forfeiture is not accurate or certainly not intended in this matter. And counsel's assertion that the matter is essentially forfeited by a failure to file a substantive reply brief, we believe is contrary to public policy and not appropriate results in the matter. Plaintiff has filed an appellant's brief and is present here arguing today, your honors. Additionally, we believe that plaintiff's, excuse me, defendants had not asked any additional questions at the trial court of the plaintiff herself. We believe that is important because essentially the plaintiff's testimony is uncontroverted here and that defense counsel did not ask any follow-up question of any kind. Plaintiff's essential assertion here is that the authority to settle that the plaintiff testified to is much broader than the agreement to this settlement that the court has asked, the trial court is finding enforceable. So essentially the question, the plaintiff believes the question posited and answered and the trial court is much broader than the question that the defendant's defense counsel is saying should have been asked or essentially that maybe she could have agreed to settlement if she had not given authority and plaintiff simply finds that to be not accurate. Additionally, here we would just simply state that the reply brief is fairly succinct in nature. Appellee's response is that there was forfeiture as well in various arguments. Essentially plaintiff asserts that is patently inaccurate. The arguments were presented in a cogent format. The facts are very precise here. There's no need to over-complicate the issues before this court and simply the plaintiff's focusing on being very straightforward in the approach here and not over-complicating the issues and again for those reasons the plaintiff appellant here would request that this court reverse and revamp the filing and we again thank you for your time. All right, thank you Ms. Peska. Thank you both. The case will be taken under advisement and the court will issue a written decision.